[Cite as *State v. Turner*, 2019-Ohio-2468.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28128 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3403 |
| | : | |
| BETTY L. TURNER | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of June, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301
West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton,
Ohio 45426
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Betty L. Turner appeals from her conviction and sentence following a bench trial on one count of aggravated drug possession, a fifth-degree felony.

**{¶ 2}** In her sole assignment of error, Turner contends her conviction was against the manifest weight of the evidence.

**{¶ 3}** At trial, Kettering police officer Jesse Anderson testified that he pulled over a van in the early morning hours of January 26, 2017 for a license-plate violation. (Trial Tr. at 29.) Turner was a front-seat passenger, and a man named Michael Fox was the driver. A third person, Alfred Morrow, was a rear-seat passenger. (*Id.* at 30.) The occupants explained that Fox was a mechanic who had been working on the van. (*Id.* at 30-31.) Anderson had all three people step out of the vehicle, and he checked their identification. After Turner exited the van, Anderson obtained her permission to perform a pat down. (*Id.* at 31.) As he began, the officer noticed that Turner "was clutching some items in her left hand." (*Id.* at 32.) When he inquired about them, Turner told him that she was holding "her cigarettes and her phone." She then handed him a cell phone and an opened pack of cigarettes. (*Id.*) Upon looking at the cigarette pack, Anderson saw "two cigarettes along with a clear cellophane Ziploc bag that contained brown powder." (*Id.*) The cellophane baggie was inside the cigarette pack, but the baggie was visible because the pack was "basically completely open." (*Id.* at 32, 35-36.) Anderson suspected that the baggie contained narcotics. (*Id.* at 32, 35.) He turned the cigarette pack toward Turner and inquired about the contents. (*Id.* at 35.) She immediately claimed that the pack belonged to Fox, the driver, despite already having told the officer that the cigarettes were hers. (*Id.*) Subsequent testing established that the brown substance inside the baggie was approximately .11 grams of methamphetamine. (*Id.* at 24.) On cross examination,

Anderson acknowledged that he did not observe any furtive movements from Turner during the time that she waited in the van before exiting. (*Id.* at 42.) He also acknowledged that she did not try to throw or otherwise discard the cigarette pack. (*Id.* at 44.)

{¶ 4} The only other witness at trial was Turner. She testified that Fox, the mechanic who was driving the van, had come to her house to fix it. (*Id.* at 53-54.) After repairing a wheel bearing, Fox "made a run" in the van at approximately 11:00 p.m. to check it out. (*Id.* at 54.) According to Turner, making a "run" meant selling methamphetamine. (*Id.* at 54-57.) Turner explained that Fox was an ex-"crackhead" who she had met 20 years earlier when she was using crack. (*Id.* at 55.) After Fox completed his run, he picked up Turner and Morrow, who accompanied him on a second drug "run." (*Id.*) Officer Anderson made his traffic stop as Turner and her companions were returning home from the second run. (*Id.* at 56.) Turner claimed that Fox had handed her the cigarette pack four or five minutes before the traffic stop and had told her that she could have it. (*Id.* at 59.) According to Turner, that is why she told Anderson that the cigarette pack was hers. (*Id.* at 63.) She denied having any knowledge, however, that the pack contained drugs. (*Id.*)

{¶ 5} On cross examination, Turner testified that she did not recall telling a detective, during a post-arrest interview, that she saw Fox with about "11 grams" of methamphetamine during the drug "run." (*Id.* at 68.) She also testified that she did not know how many cigarettes were in the pack at issue because she never looked. (*Id.*) Turner stated that she did not recall telling a detective during her post-arrest interview that there originally were three cigarettes in the pack but that she had smoked one, leaving only two. (*Id.* at 69.) On re-direct examination, Turner "remembered" that she

actually had gone to pick up Fox to do the drug run, that Fox had given her $20 in exchange, and that she had used the $20 to buy a "$20 rock." (*Id.* at 73.) As a result, she was "high" at the time. (*Id.*)

{¶ 6} By stipulation of the parties, the trial court admitted into evidence an audio recording of Turner's post-arrest interview with a detective. (*Id.* at 24, 52.) During the interview, she did tell the detective that there were three cigarettes in the pack and that she smoked one. She knew there were two cigarettes left because the top of the pack was torn off. (State's Ex. 2 at 24:28 - 24:39.) She also told the detective that she saw Fox with an estimated 11 grams of methamphetamine in his possession during the drug run. (*Id.* at 17:10.) When the detective threatened to have the baggie of drugs found inside the cigarette pack tested for her DNA, Turner responded, "Great. Great. I'm innocent."

{¶ 7} Based on the evidence presented, the trial court found Turner guilty of aggravated drug possession based on the .11 grams of methamphetamine found inside the cigarette pack in her possession. (Trial Tr. at 81.) The trial court sentenced her to up to five years of community control. (Doc. # 43.) This appeal followed.

{¶ 8} Although her assignment of error challenges the manifest weight of the evidence to support her conviction, Turner's appellate brief also recites the standards governing a challenge to the legal sufficiency of the evidence. She then argues that the State failed to prove she "knowingly" possessed a controlled substance. Although Turner admitted having the pack of cigarettes in her hand, she cites her denial about knowing the pack contained a baggie of drugs. She also stresses that she did not drop the cigarette pack or attempt to leave it in the van when she stepped out. Turner claims this supports an inference that she did not know drugs were inside the pack. In addition, she cites her

positive reaction on the audio tape when the detective threatened to have the baggie tested for her DNA.

{¶ 9} When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 10} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} With the foregoing standards in mind, we conclude that Turner's conviction

was supported by legally sufficient evidence and was not against the weight of the evidence. To convict Turner, the State was required to prove that she knowingly obtained or possessed methamphetamine. R.C. 2925.11(A). The fact that Turner possessed methamphetamine was undisputed. Officer Anderson saw it in a cigarette pack in her hand. The only question is whether she "knowingly" possessed the drug. Resolution of that issue depended on Turner's awareness that the baggie of methamphetamine was in the cigarette pack. In our view, the record contains legally sufficient evidence to support a finding that she did, and such a finding was not against the manifest weight of the evidence.

{¶ 12} As an initial matter, we have examined the cigarette pack Turner was holding in her hand. The top of the pack was nearly torn off, making it easy to see anything inside. We note too that Turner told the detective during her interview that she knew two cigarettes were in the pack because there had been three and she had smoked one. The fact that Turner knew the number of cigarettes in the pack supported an inference that she at least had looked at it. In addition, Anderson testified that the baggie of drugs was about half-way up in the pack, making it visible to him when he took the pack from Turner. (Trial Tr. at 36.) Turner's testimony that Fox gave her his own cigarette pack and told her she could keep it also makes little sense. The trial court reasonably could have found it implausible that a drug dealer would give Turner his cigarette pack containing methamphetamine and allow her to keep it. It is even more implausible that he would do so without telling Turner, an admitted drug user, that drugs were inside.

{¶ 13} We recognize that the record contains some facts supporting an inference that Turner did not know drugs were inside the cigarette pack. For example, Turner waited

in the van before being asked to step out. While doing so, she made no furtive movements and did not discard the pack. She also did not attempt to hide or discard the pack after she exited the van. This could be because she had no knowledge the pack contained drugs. Or it could be because she did not think Anderson would ask her to step out of the van. She also might have believed it would be less risky to hold the pack and hope Anderson did not ask for it once outside of the van rather than trying to discard it at that time. As for Turner's positive reaction when the detective threatened to subject the baggie to DNA testing, she may have known that she had not touched the baggie. Regardless, Turner could have known about the baggie's presence without actually touching it. Fox might have handed her the cigarette pack at the outset of the traffic stop and asked her to hold it for him because it contained drugs. If so, and if Turner saw the drugs or was told about their presence, then she knowingly possessed a controlled substance even if she never actually touched the baggie.

{¶ 14} In our view, all of the foregoing issues were matters for the trial court to resolve when evaluating the evidence and assessing witness credibility. The State's evidence, if believed, was legally sufficient to convince the average mind of Turner's guilt beyond a reasonable doubt. Turner's conviction also was not against the manifest weight of the evidence. We do not find that, in resolving conflicts in the evidence, the trial court clearly lost its way and created a manifest miscarriage of justice. This is not an exceptional case in which the evidence weighed heavily against Turner's conviction.

{¶ 15} The assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Christopher A. Deal
Hon. E. Gerald Parker, Jr.